[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 314.]

THE STATE EX REL. BOS, APPELLEE, *v*. NAVISTAR INTERNATIONAL TRANSPORTATIONAL CORPORATION, APPELLANT; INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Bos. v. Navistar Internatl. Transp. Corp*., 2000-Ohio-88.]

*Workers' compensation—Court of appeals' grant of writ of mandamus ordering Industrial Commission to order employer to pay claimant wage-loss compensation calculated on a week-by-week comparison based on its available earnings record affirmed.*

(No. 99-1057—Submitted November 15, 2000—Decided December 13, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-628.

_____

*Vorys, Sater, Seymour & Pease, L.L.P.*, and *Joseph A. Brunetto*, for appellant.

*Stanley R. Jurus Law Office* and *Robert M. Robinson*, for appellee.

_____

*Per Curiam.*

{¶ 1} Robert W. Bos, appellee, sought a writ of mandamus to compel the Industrial Commission of Ohio to vacate its order denying him R.C. 4123.56(B) wage-loss compensation and to enter an order granting this compensation beginning on October 2, 1995. The Court of Appeals for Franklin County granted the writ, finding that the commission had abused its discretion in denying wage-loss compensation on the ground that Bos had not experienced a wage loss after returning to work for Navistar International Transportation Corporation ("Navistar"), appellant. On Navistar's appeal as of right, we affirm.

{¶ 2} On September 22, 1994, Bos injured his back and chest while employed by Navistar, a self-insured employer in the workers' compensation

system. Bos's claim was allowed for "thoracic and lumbar strain; left chest contusion." On October 2, 1995, Bos returned to light-duty work in order to accommodate his medical restrictions, which precluded him from working in his previous position.

{¶ 3} On June 5, 1997, Bos moved the commission for wage-loss compensation. He complained that workers in his former position were being paid at a higher hourly rate than he was in his new light-duty position. The commission denied wage-loss compensation, finding that a wage loss can be shown only by comparing the *claimant's* pre- and postinjury earnings; it is not based on the current earnings of workers in comparable positions.

{¶ 4} Bos then challenged the commission's order in mandamus. The court of appeals agreed with the commission that Bos could not establish an actual wage loss based on the salaries others had attained since his injury. But the court of appeals also found that the commission had overlooked prima facie evidence suggesting at least one two-week wage-loss period. Relying on a payroll record showing that Bos earned $781.39 per week for a two-week pay period in December 1996, the court found an actual wage loss after comparing that postinjury figure with Bos's average weekly preinjury earnings of $920.18.

{¶ 5} Navistar contends, in effect, that the court of appeals should have compared Bos's preinjury average weekly wage, or $920.18, with his postinjury average weekly wage, which Navistar calculated to be $959.90. Had the court made this comparison, Navistar continues, it would have realized that Bos is actually earning more since his injury than he was before and, therefore, has not experienced an actual wage loss. We cannot agree because Navistar's method for determining wage-loss compensation eligibility is contrary to law.

{¶ 6} Wage-loss compensation used to be payable when the claimant's preinjury average weekly wage ("AWW") or preinjury full weekly wage ("FWW"), whichever was greater, exceeded the claimant's postinjury earnings. Former Ohio

Adm.Code 4121-3-32(A)(5), 1987-1988 Ohio Monthly Record 64. But effective May 15, 1997, the formula changed. It is now based solely on whether the claimant's preinjury AWW exceeds his or her present earnings. Ohio Adm.Code 4125-1-01(F). "Present earnings" means:

"[T]he claimant's actual weekly earnings which are generated by gainful employment unless the claimant has substantial variations in earnings. Where the claimant has substantial variations in earnings, the adjudicator shall apportion the earnings over such period of time that reasonably reflects the claimant's efforts to earn such amount. Earnings generated from commission sales, bonuses, gratuities, and all other forms of compensation for personal services customarily received by claimant in the course of his or her employment and accounted for by the claimant to his or her employer will be included in present earnings for the purposes of computing the wage loss award. In instances where sales commission, bonuses, gratuities, or other compensation are not paid on a weekly or bi-weekly basis, their receipt will be apportioned prospectively over the number of weeks it is determined were required to initiate and consummate the sale or earn the bonus, gratuity, or other compensation." Ohio Adm.Code 4125-1-01(A)(16).

{¶ 7} Yet the old formula still applies in cases, as here, where the claim is for a period before May 15, 1997. Ohio Adm.Code 4125-1-01(H)(2). Thus, the court of appeals properly reviewed Bos's wage-loss compensation claim in accordance with the former R.C. 4121-3-32(A)(5) standard. The parties apparently agree that the $920.18 AWW amount is the appropriate preinjury figure for comparison. The question posed by Navistar's appeal, therefore, is whether $920.18 should be offset by an amount reflecting Bos's actual postinjury weekly wage or an average of his weekly wage over some representative period.

{¶ 8} We recently answered this question in *State ex rel. Haddox v. Indus. Comm.* (2000), 88 Ohio St.3d 279, 725 N.E.2d 635. In *Haddox*, as here, the claimant's wages with overtime sometimes exceeded his preinjury weekly wages

and sometimes fell below that amount. The employer attempted to offset the wage loss claimant experienced in those less lucrative weeks by carrying over wages from the more profitable ones. We disapproved of this practice and held that the basic R.C. 4123.56 wage-loss compensation formula mandates a week-by-week analysis in order to determine a claimant's actual wage loss.

{¶ 9} Ohio Adm.Code 4125-1-01(A)(16) did not apply in *Haddox*, but it is consistent with our decision. The rule defines the claimant's present earnings as the claimant's *actual* weekly earnings, not any averaged representation of those earnings. Moreover, while Navistar insists that this is a situation requiring apportionment under Ohio Adm.Code 4125-1-01(A)(16), we agree with the court of appeals that Bos has not experienced a "substantial variation" in earnings within the meaning of the rule, even if it did apply. The apportionment described there applies only when commissions, bonuses, gratuities or any other forms of compensation are "not paid on a weekly or biweekly basis." The compensation Bos receives, at least to the extent evident in this record, is paid on a biweekly basis.

{¶ 10} For these reasons, we follow *Haddox* and hold that the commission abused its discretion in failing to properly assess on a weekly basis whether Bos experienced an actual wage loss as of his return to work on October 2, 1995. We affirm the court of appeals' judgment granting a writ of mandamus ordering the commission to order Navistar to pay wage-loss compensation calculated on a week-by-week comparison based on its available earnings record.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

―――――――――