DECISION
{¶ 1} Relator, DaimlerChrysler Corporation ("relator"), filed this original action for a writ of mandamus ordering respondent, Industrial Commission of Ohio *Page 2 
("commission"), to vacate its orders awarding wage-loss compensation under R.C. 4123.56(B) to respondent, Gregory P. Breuer ("claimant"), and to enter orders denying such compensation. In the alternative, relator requests a writ ordering the commission to vacate its order denying relator's motion for allocation of the compensation between two industrial claims and to enter an order granting that motion.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant a writ of mandamus ordering the commission to vacate its orders granting wage-loss compensation under R.C. 4123.56(B) and to enter orders denying such compensation. (Attached as Appendix A.) Claimant and the commission (collectively, "respondents") filed objections to the magistrate's decision, arguing that the magistrate misinterpreted the law as it applies to wage-loss compensation and, in particular, misapplied the decision of the Supreme Court of Ohio in State ex rel. Jordan v. Indus.Comm., 102 Ohio St.3d 153, 2004-Ohio-2115.
 {¶ 3} No party filed objections to the magistrate's findings of fact, and we adopt them as our own. The facts most pertinent to our consideration of the objections are as follows.
 {¶ 4} On June 2, 2002, claimant suffered an industrial injury while employed as a mechanic for relator. He underwent surgery, and his doctor imposed permanent work restrictions. These restrictions did not limit the number of hours claimant could work in a day. *Page 3 
 {¶ 5} On September 4, 2003, claimant returned to work. While relator argues that claimant returned to his former position as a mechanic, claimant argues that he was not able to perform that position within his restrictions and, therefore, did not "return" to that position. On the day of his return, claimant bid on a new position in the sanitation department, and his transfer to that department became effective October 20, 2003.
 {¶ 6} On May 3, 2005, claimant filed his first application for wage-loss compensation, beginning September 8, 2003, based on his alleged reduced wages in the sanitation position. As detailed in the magistrate's decision, relator raised a number of issues regarding claimant's application, and the commission issued multiple decisions on the application. In order to address the objections most efficiently, we limit our discussion to the full commission's decision based on the January 5, 2006 hearing and, specifically, the following conclusion regarding the impact of claimant's reduced overtime in the sanitation position:
 The Commission finds that the injured worker returned to work and suffered a wage loss for the weeks noted above as the result of the conditions allowed in this claim. * * * Due to a fluctuation in the number of overtime hours available, the injured worker periodically earned less per week than his average week wage. The Commission finds that during those weeks, the injured worker suffered a wage loss as the result of the allowed conditions in this claim. * * *
 {¶ 7} In essence, the commission concluded that claimant suffered a compensable wage loss, even though his hourly wages were roughly the same in the two positions, because claimant had fewer overtime hours in the sanitation position — a position his injury forced him to take. While he was able to work overtime, and did work some overtime in the sanitation position, his weekly wages were sometimes lower in the *Page 4 
new position simply because the sanitation department offered less overtime. Because his injury caused him to take the sanitation position, there was a causal connection between his injury and his loss in wages.
 {¶ 8} The magistrate found that the commission's conclusion in this respect was inconsistent with Jordan. We agree.
 {¶ 9} In Jordan, as the magistrate explains, the claimant suffered an injury, took a new position within his work restrictions, and received a lower weekly wage because he worked less overtime in the new position. The record contained no evidence, however, as to the reason for his reduced overtime. The Supreme Court of Ohio stated:
 * * * Two key questions thus remain unaddressed. First, was overtime offered? If it was and was declined, claimant's refusal — unless supported by medical restrictions on the number of hours claimant could work — would break the requisite causal connection. Second, if it was not offered, then why not? If, for example, overtime was rescinded on a plantwide basis for economic reasons, then again there would be no causal connection. If, however, the employer singled out claimant because of his injury, a causal relationship between injury and wage loss could be present.
Jordan at ¶ 10. Because the evidence did not address these questions, the court found that "further consideration of the question of causal relationship is warranted." Id. at
 {¶ 10} Here, we know the answers to the questions the Supreme Court raised in Jordan. As to whether overtime was offered and declined for medical reasons in the new position, we know that claimant could and did work the overtime hours available to him. As to those hours of overtime not available to him in the new position, the evidence indicates that it was simply a matter of the fluctuation in hours available in *Page 5 
different departments. Claimant offers no evidence that the employer singled him out in any way or that his ability to work overtime in the new position was directly related to his injury or work restrictions.
 {¶ 11} We acknowledge respondents' assertion that, once the commission determines that an industrial injury has forced a claimant to find a new position, applicable wage-loss compensation rules should require only a straightforward week-by-week comparison of a claimant's former weekly wage to his present earnings. That is not the approach the Supreme Court took in Jordan, however.
 {¶ 12} Importantly, in Jordan, the Supreme Court did not rely on a straightforward comparison between the claimant's former weekly wage (with substantial overtime) and his present earnings (with less overtime). Instead, the court returned the case to the commission for "further consideration of the question of causal relationship." Id. at ¶ 11. And as to that further consideration, the court indicated its belief that an employer's limitation of overtime for economic reasons, as opposed to reasons specific to a claimant, was sufficient to break the causal connection between a claimant's injury and his loss of wages based on reduced overtime.
 {¶ 13} Applying Jordan here, because the evidence shows no direct causal relationship between claimant's injury and his reduced overtime, we need no additional evidence or further consideration to determine that the commission should have denied compensation on these grounds. Accordingly, we overrule respondents' objections.
 {¶ 14} Having conducted an independent review of the evidence in this matter, and finding no error of law or other defect on the face of the magistrate's decision, we adopt the magistrate's decision as our own, including the findings of fact and *Page 6 
conclusions of law contained in it. In accordance with the magistrate's decision, we grant a writ of mandamus ordering the commission to vacate its orders granting R.C. 4123.56(B) wage-loss compensation and to enter orders denying said compensation.
Objections overruled, writ of mandamus granted.
 McGRATH and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 7 
 APPENDIX A MAGISTRATE'S DECISION Rendered on June 26, 2007 IN MANDAMUS {¶ 15} In this original action, relator, DaimlerChrysler Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders awarding R.C. 4123.56(B) wage loss compensation to respondent *Page 8 
Gregory P. Breuer, and to enter orders denying wage loss compensation. In the alternative, relator requests that the writ order the commission to vacate its order denying relator's motion that wage loss compensation be allocated equally between two industrial claims, and to enter an order granting relator's motion for an allocation.
Findings of Fact: {¶ l6} 1. Respondent Gregory P. Breuer ("claimant") has two industrial claims that arose out of and in the course of his employment with relator, a self-insured employer under Ohio's workers' compensation laws. Claimant began his employment with relator on April 25, 1973.
 {¶ 17} 2. On August 31, 1998, claimant sustained injuries to both upper extremities while employed as a mechanic at relator's automobile assembly plant located at Toledo, Ohio. The industrial claim, number 98-532171, is allowed for "Bilateral Trigger Finger 3rd
[and] 4th finger / Right Carpal Tunnel Syndrome / Bilateral Elbow Sprain/Strain only."
 {¶ 18} 3. On June 2, 2002, claimant sustained another industrial injury while employed as a mechanic for relator. This industrial claim, number 02-831246, is allowed for "herniated disc L4-5."
 {¶ 19} 4. On January 10, 2003, claimant underwent lumbar disc surgery that was performed by Arun Patel, M.D.
 {¶ 20} 5. On September 2, 2003, at relator's request, claimant was examined by Donato J. Borrillo, M.D., for the "herniated disc L4-5" condition. Dr. Borrillo opined:
 * * * In my opinion, the patient has reached maximum medical improvement and has no further treatments or diagnostics planned. * * * *Page 9 
 * * *
 * * * [A]lthough a complete job description was not provided, the position of Production Operator (as described by the employee) does not require heavy lifting. Mr. Breuer is; therefore, capable of returning to his former position even with restrictions[.] * * * The employee denied any concerns with returning to this position.
 * * *
 Mr. Breuer should not lift 40 pounds or greater. In addition, he should be limited in his bending and twisting of the lower back to 70% of his time at work. These restrictions, in my opinion, are permanent in nature and no foreseeable changes are anticipated.
 {¶ 21} 6. Apparently, on the day he was examined by Dr. Borrillo, claimant visited the plant dispensary. A plant dispensary note, authored by nurse Bruce, dated September 2, 2003 states:
Recheck of low back, s/p surgery Jan 2003. He is not working with his restrictions.
 Bringing paper from Dr[.] Patel, dated 8-25, ". . . should wear back brace at work not do excessive bending not lift more than 40 lbs."
 Employee says he has an appointment with a Dr[.] [Borrillo] today at 11:00am.
 * * * To see plant doctor.
 {¶ 22} 7. On September 4, 2003, claimant returned to work at the assembly plant. Officially, claimant returned to his previous position as a mechanic on September 4, 2003. However, on that day, claimant bid on a permanent position in the sanitation department. *Page 10 
 {¶ 23} 8. Claimant's transfer to the sanitation department became effective October 20, 2003. Prior to claimant's start date at the sanitation department, claimant voluntarily accepted two "inverse layoffs" from September 6 through September 21, 2003 and from October 10 through October 19, 2003. A so-called "inverse layoff" occurs when an employee having seniority elects to take a layoff offered by the employer.
 {¶ 24} 9. On May 3, 2005, claimant filed a C-140 application for wage loss compensation in claim number 02-831246. No other claim number was identified on the application. On the application, claimant requested wage loss compensation beginning September 8, 2003.
 {¶ 25} 10. In support of the application, Dr. Patel completed the "medical report" form that must accompany the application. Dated January 3, 2005, Dr. Patel's report lists August 31, 2004 as the date of last medical examination.
 {¶ 26} The C-140 medical report form asks the physician of record to estimate the physical capacity by checkmarking boxes. Dr. Patel indicated by checkmark that claimant can sit for six hours during an eight hour day and he can stand and walk for four hours. Dr. Patel indicated that claimant can never lift or carry over 50 pounds, and he should only occasionally lift or carry from 26 to 50 pounds. Dr. Patel indicated that the restrictions were temporary.
 {¶ 27} 11. It should be further noted that Dr. Patel's medical report dated January 3, 2005, identified only claim number 02-831246.
 {¶ 28} 12. Claimant's May 3, 2005 application for wage loss compensation was heard by a district hearing officer ("DHO") on July 1, 2005. Following the hearing, the *Page 11 
DHO issued an order awarding wage loss compensation from September 8, 2003 to November 30, 2004, with the exception of certain weeks identified in the order.
 {¶ 29} 13. Relator administratively appealed the DHO's order of July 1, 2005.
 {¶ 30} 14. On August 10, 2005, relator moved that wage loss compensation, should it be ultimately awarded pursuant to claimant's May 3, 2005 application, be allocated equally between claim numbers 02-831246 and 98-532171.
 {¶ 31} 15. Relator's administrative appeal of the DHO's order of July 1, 2005 was heard by a staff hearing officer ("SHO") on August 15, 2005. The hearing was recorded and transcribed for the record. At the hearing, claimant and Tracy Relue, relator's labor relations representative, testified.
 {¶ 32} 16. Following the August 15, 2005 hearing, the SHO issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 07/01/2005, is MODIFIED to the following extent. Therefore, the injured worker's C-140 Application for Wage Loss, filed on 05/03/2005, is GRANTED to the extent of this order.
 At the District Hearing Officer level, the injured worker's counsel DISMISSED any request for Wage Loss, from 12/01/2004 forward. Therefore, that issue is MOOT and not addressed by this Staff Hearing Officer.
 This leaves injured worker's request for Working Wage Loss, between 09/08/2003 and 11/30/2004, as the issue at hand. The employer alleges that the injured worker did not return to work with the employer of record on a light-duty position, but returned to work at his prior position of employment. Therefore, the employer argues that any Wage Loss is not related to residuals from allowed conditions within claim. Further, the employer argues that injured worker "bid out" of his prior position of employment into a different job. Therefore, the employer argues that * * * any Wage Loss *Page 12 
was related to the injured worker's voluntary change of job status. Last, the employer argues that the injured worker took voluntary lay-offs. Therefore, the employer argues that there is no Wage Loss payable.
 The employer also argues that any restrictions that potentially caused a Wage Loss are divisible between two separate claims and not properly, fully payable within this claim. The issue of allocation of Wage Loss is not properly before this Staff Hearing Officer, at this time. Apparently, the Self-Insured Employer has filed a Motion regarding allocation of Wage Loss between two separate claims. However, only one claim is properly before this Staff Hearing Officer, at this time. The allocation of Wage Loss benefits, between more than one claim, is deferred to the Hearing Officer adjudicating the Self-Insured Employer's Motion regarding allocation of benefits.
 The injured worker testified that he returned to work, but was not working full-duty, related to residuals within this claim. Shortly after his return to work, he bid into another position where he would be able to work within restrictions. This Staff Hearing Officer finds that injured worker's testimony is credible and persuasive that injured worker did not return to work full-duty at his prior position of employment. Further, injured worker's testimony is found to persuasive that injured worker did not "voluntarily" bid into a lessor [sic] job such that Wage Loss benefits should not be payable.
 The more problematic question is whether or not injured worker took a voluntary lay-off. The Court in The Andersons v. Industrial Commission (1992), 64 Ohio St. 3d 539 indicated that a lay-off of a Workers' Compensation claimant does not bar Wage Loss Compensation when the claimant's departure was initiated by the employer without intent of the claimant to abandon his employment. The injured worker testified that he was hired into his new position as an "inverse replacement." Ms. Relue was unable to refute that injured worker was hired as an inverse replacement.
 Inverse replacements are put on lay-off when none of the other employees within the department [wish] to take a voluntary lay-off. The injured worker testified that he voluntarily took inverse lay-off during September and *Page 13 
October of 2003 (See Transcript of Staff Hearing Officer hearing, Page 37).
 Therefore, Wage Loss is not found to [be] payable related to injured worker's voluntary leaving the workforce during a voluntary lay-off in September and October of 2003. As such, Working Wage Loss is not found to be payable, from 09/08/2003 through 10/30/2003.
 The injured worker testified that after October of 2003 he no longer voluntarily accepted lay-off. At that time, he was required, as the inverse lay-off replacement person, to take lay-off when none of the other employees would take it. As such, this Staff Hearing Officer finds Working Wage Loss to be payable during lay-off weeks[.] * * *
 This Staff Hearing Officer finds the following weeks had no Wage Loss sustained[.] * * *
 Restrictions regarding return to work, dated 09/02/2003, from Dr. Borrillo, are on file. Dr. Borrillo opined that injured worker could return to work at his prior position of employment with the restrictions as he outlined. However, Dr. Borrillo did not have a complete job description. Therefore, the opinion of Dr. Borrillo, that the injured worker could return to his full position of employment, is not found to be persuasive.
 Employer dispensary notes and restriction print-outs indicate restrictions were updated on a regular basis by the plant dispensary physician. Therefore, it is the finding of this Staff Hearing Officer that injured worker returned to work with restrictions related to residual impairments from allowed conditions within this claim. Further, this Staff Hearing Officer finds that injured worker did not return to his prior position of employment as restrictions prevented him from carrying out full work duties. Thereafter, injured worker transferred into a different position more within his restrictions.
 It is the further finding of this Staff Hearing Officer that the difference between wages of the injured worker at the time [of] his injury, and earnings for the periods indicated previously within this order, where [sic] the result of medical *Page 14 
impairments causally related to the industrial injury in this claim.
 It is the finding of this Staff Hearing Officer that injured worker has returned to work within restrictions, which have arisen out of this injury, and prohibited injured worker from performing his prior position of employment.
 This Staff Hearing Officer finds that injured worker was not required to performed [sic] job searches, as he was involved in stable employment within his restrictions, that was comparable paying, with the employer of record. The injured worker was a 30 plus year employee with the employer of record with full benefits and accrued retirement benefits with this employer. Further, the lay-off periods were of short-term with supplemental benefits from the employer of record along with unemployment benefits. Therefore, a job search appears to have been futile.
 * * *
 Therefore, this Staff Hearing Officer finds that Working Wage Loss benefits are found to be payable for the closed period of 11/01/2003 through 11/30/2004, less the specific weeks noted as having no wage loss.
(Emphasis sic.)
 {¶ 33} 17. On October 19, 2005, another SHO mailed an order refusing relator's appeal from the SHO's order of August 15, 2005.
 {¶ 34} 18. On October 20, 2005, a DHO heard relator's August 10, 2005 motion for an allocation of wage loss compensation between the two industrial claims. Following the hearing, the DHO issued an order denying relator's motion. The DHO's order explains:
 The District Hearing Officer finds that Wage Loss Compensation, previously ordered by the Industrial Commission in claim #02-831246, is properly paid and allocated in claim #02-831246. *Page 15 
 The District Hearing Officer further finds that wage loss compensation previously ordered by the Industrial Commission is not payable in, nor allocated to, claim #98-532171.
 The employer contends that if wage loss compensation is payable in claim #02-831246, then wage loss should be allocated between claim #02-831246 and claim #98-532171, as the Injured Worker's restrictions, which have resulted in a wage loss, are attributable to both claim numbers. The District Hearing Officer does not find this contention to be true.
 First, by way of background, the District Hearing Officer notes that a wage loss application has only been filed in claim #02-831246. A Staff Hearing Officer order from hearing on 8/15/2005, in claim #02-831246, finds that wage loss is payable in the 2002 claim for the time period of 9/8/2003 until 11/30/2004. The employer has appealed the decision to the Industrial Commission. Further appeal was refused by the Staff Hearing Officer in an order, dated 10/19/2005. The employer now requests that wage loss compensation be allocated between Injured Worker's 2002 and 1998 claims.
 The Injured Worker's 1998 claim has been allowed for Bilateral Trigger Finger, Third; Bilateral Trigger Finger, Fourth; and Right Carpal Tunnel Syndrome; and Bilateral Elbow Strain/Sprain. The Injured Worker's 2002 claim has been allowed for Herniated Disc at L4-5. Counsel for the employer argues that the Injured Worker's restrictions, which have caused the wage loss, are at least, in part, attributable to the Injured Worker's allowed conditions for the 1998 claim. However, the District Hearing Officer finds that the reason for the Injured Workers' wage loss comes from his lifting restrictions which are solely a part of the 2002 claim. The Injured Worker did not sustain any wage loss between 1998 and 2003 and has never applied for wage loss in the 1998 claim.
 A review of the Injured Worker's restrictions on file from Arun Patel, M.D., dated 8/2/2005, show that the Injured Worker is not restricted in the use of hands or from repetitive actions, such as simpl[e] grasping, pushing and pulling arm controls, and fine manipulation. The Injured Worker is significantly *Page 16 
restricted in his ability to lift weights above 26 pounds. These restrictions would appear more closely related to the Injured Worker's 2002 claim allowed for herniated disc at L4-5.
 Therefore, the District Hearing Officer finds that wage loss previously ordered in claim #02-831246 is not properly allocated between claim #02-831246 and #98-532171 and remains fully attributable to claim #02-831246.
 Alternatively, the District Hearing Officer finds that the Injured Worker has never made an application for wage loss in claim #98-532171. Therefore, the District Hearing Officer finds there is no jurisdiction to address wage loss in the 1998 claim.
 {¶ 35} 19. On November 4, 2005, relator moved for reconsideration of the SHO's order mailed October 19, 2005 refusing relator's administrative appeal.
 {¶ 36} 20. On December 6, 2005, the three-member commission mailed an interlocutory order stating:
 It is the finding of the Industrial Commission that the employer has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought and a clear mistake of law of such character that remedial action would clearly follow.
 Specifically, it is alleged that the Staff Hearing Officer both granted and denied payment of wage loss compensation for the same period. Compensation was granted from 03/27/2004 to 05/16/2004, but denied for 03/28/2004 through 04/31/2004. Additionally, it is alleged that the Staff Hearing Officer ruled on periods of wage loss compensation not requested by the injured worker.
 The order issued 10/19/2005 is hereby vacated.
 Based on these findings, the Industrial Commission directs that the employer's request for reconsideration filed 11/04/2005 is to be set for hearing to determine if the alleged *Page 17 
mistakes of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.
 In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issue. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under Ohio Revised Code 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issue.
 This order is issued pursuant to State ex rel. Nicholls v. Indus. Comm. (1998) 81 Ohio St.3d 454, State ex rel. Foster v. Indus. Comm. (1999) 85 Ohio St.3d 320, and in accordance with Ohio Administrative Code 4121-3-09.
 {¶ 37} 21. On January 5, 2006, the three-member commission heard relator's November 4, 2005 motion for reconsideration. Following the hearing, the commission, all three members concurring, issued an order stating:
 * * * After further review and discussion, it is the order of the Industrial Commission that the employer's request for reconsideration, filed 11/04/2005, is granted, and the Staff Hearing Officer order, issued 09/27/2005, is vacated. It is the order of the Commission that the C-140 Application for Wage Loss, filed 05/03/2005, is granted to the extent of this order.
 It is the finding of the Commission that the employer has met its burden of proving that the Staff Hearing Officer order, issued 09/27/2005, contains a clear error of such character that remedial action would clearly follow. Specifically, the Staff Hearing Officer both granted and denied wage loss benefits for the same period, which constitutes a clear mistake of law, mistake of fact, and an error by an inferior tribunal. Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52, State ex rel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d, 454, State ex rel. Foster v. Indus. Comm. (1999) 85 Ohio St.3d 320, and State ex rel. Gobich v. Indus. Comm. (2004), 103 Ohio St.3d 585
to correct this error. *Page 18 
 The Commission finds that the injured worker amended the requested period of wage loss benefits at the District Hearing Office level. Specifically, the injured worker withdrew any request for wage loss benefits from 12/01/2004 forward. Consequently, pursuant to Ohio Adm. Code 4125-1-01, the specific period of wage loss benefits at issue before the Commission is 09/07/2003 through 11/27/2004.
 It is the order of the Commission that working wage loss compensation is granted for 21 weeks[.] * * *
 The Commission finds that the injured worker returned to work and suffered a wage loss for the weeks noted above as the result of the conditions allowed in this claim. The Commission further finds that the injured worker attempted to return to his former position as a mechanic but was unsuccessful due to restrictions related to the allowed conditions in this claim. Pursuant to the provisions of his union contract, he was able to successfully bid into a position within his restrictions in the sanitation department. Due to a fluctuation in the number of overtime hours available, the injured worker periodically earned less per week than his average week wage. The Commission finds that during those weeks, the injured worker suffered a wage loss as the result of the allowed conditions in this claim. Therefore, for the weeks listed above, the injured worker is granted wage loss compensation and is to be paid in accordance with the provision of Ohio Adm. Code 4125-1-01.
 It is the further order of the Commission that wage loss compensation is denied for 44 weeks[.] * * *
 It is the finding of the Commission that the injured worker returned to work in September, 2003. Per his testimony, he returned to his position as a mechanic, but did not perform any mechanic duties. Beginning 09/08/2003, he took a voluntary lay-off that was unrelated to his industrial injury. The voluntary lay-off ran through 10/30/2003.
 Pursuant to The Andersons v. Indus. Comm. (1992), 64 Ohio St.3d 539, a lay-off of a Workers' Compensation claimant does not bar wage loss compensation when the claimant's departure was initiated by the employer without intent of the claimant to abandon his employment. In this instance, the *Page 19 
injured worker voluntarily took a lay-off. Therefore, wage loss compensation is denied as noted above from 09/07/2003 through 11/01/2003 based upon the voluntary lay-off.
 For the remaining weeks wage loss is denied, the injured worker either had earnings that exceeded his average weekly wage or he submitted no records that documented a wage loss. As noted previously, the entire period from 09/07/2003 through 11/27/2004 is at issue before the Commission. Failure to provide records documenting a wage loss for any week results in a denial of the entire week.
 {¶ 38} 22. On June 15, 2006, an SHO heard relator's appeal from the DHO's order of October 20, 2005, regarding allocation. Following the hearing, the SHO issued an order stating:
 The Order of the District Hearing Officer, from the hearing of October 20, 2005, mailed November 25, 2005, is hereby MODIFIED to the following extent.
 Therefore, the employer's C-86 Motion, filed August 10, 2005, is hereby DENIED, but the basis for said denial is MODIFIED to the extent of this Order.
 The employer's C-86 Motion, filed August 10, 2005, requests that, "wage loss compensation be allocated equally between claim number 02-831246 and claim number 98-532171, for the period from February 1, 2004 forward" (emphasis added).
 The employer bases its request upon Ohio Revised Code Section 4123.56(B). Said Code Section states that, "Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than his former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, he shall receive compensation at sixty-six and two-thirds per cent of his weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks" (emphasis added).
 The reason for the employer's Motion is the employer's concern that the injured worker will receive the maximum of *Page 20 
two hundred weeks Wage Loss Compensation under the instance [sic] claim, claim number 02-831246, and then, subsequently, file an Application for yet another two hundred weeks of Wage Loss Compensation under claim number 98-532171.
 However, the employer does not stipulate that the injured worker does, in fact, suffer a wage loss, as a result of disability resulting from the allowed conditions in claim number 98-532171.
 It is the finding of this Staff Hearing Officer that no "Application for Compensation for Wage Loss" has been filed in claim number 98-532171, as required by Industrial Commission Rule 4125-1-01(C). Furthermore, it is noted that Industrial Commission Rule 4125-1-01(C)(1), provides the requirement that, "the claimant must certify that all the information that is provided in the application is true and accurate to the best of his or her knowledge and further certify that he or she has served a copy of the application, with copies of supporting documents, on the employer of record" (emphasis added). Thus, it is obvious, from the wording of the Ohio Administrative Code, that the Ohio legislature intended that such an "Application for Compensation for Wage Loss" was to be filed by a "claimant" and not an employer.
 Thus, it is the finding of this Staff Hearing Officer that the issue of payment of Wage Loss Compensation, in claim number 98-532171, is not yet ripe for adjudication, since no Application for Compensation for Wage Loss" has been filed in that claim and no copy of such an Application has been served upon the employer of record for claim number 98-532171.
 Therefore, this Staff Hearing Officer does not have jurisdiction to prospectively rule upon an issue (in regard to payment of Wage Loss Compensation from February 1, 2004 forward in claim number 98-532171), which speculatively may be filed at some time in the future.
 It is the further finding of this Staff Hearing Officer that the injured worker previously filed a C-140 Application for Wage Loss Compensation in the instant claim, claim number 02-831[2]46, on May 3, 2005. Said C-140 Application for Wage *Page 21 
Loss Compensation was previously adjudicated at the District Hearing Officer's hearing of July 1, 2005, the Staff Hearing Officer hearing of August 15, 2005 and, finally, at the Industrial Commission Reconsideration hearing of January 5, 2006. The Industrial Commission then published an order, on May 6, 2006, from the Reconsideration hearing of January 5, 2006. In the second paragraph on page 2 of the Industrial Commission's order, from the Reconsideration hearing of January 5, 2006, mailed May 6, 2006, the Industrial Commission specifically made a finding that, "the injured worker returned to work and suffered a wage loss, for the weeks noted above, as the result of the conditions allowed in this claim . . . The Commission finds that, during those weeks, the injured worker suffered a wage loss, as the result of the allowed conditions in this claim. Therefore, for the weeks listed above, the injured worker is granted wage loss compensation and is to be paid in accordance with the provisions of Ohio Administrative Code 4125-1-01" (emphasis added).
 The Industrial Commission's Reconsideration Order, from the hearing of January 5, 2006, published May 6, 2006, is a final Order of the Industrial Commission. Therefore, there is already a final Order of the Industrial Commission which made a finding that, "The injured worker suffered a wage loss as a result of the allowed conditions in this claim" (emphasis added). Therefore, there is no basis for the employer's request that, "wage loss compensation be allocated equally between Claim No. 02-831246 and Claim No. 98-532171, for the period from February 1, 2004 forward" (emphasis added).
 Therefore, it is the order of this Staff Hearing Officer that the employer's C-86 Motion, filed August 10, 2005, which requested that the Wage Loss Compensation previously awarded in this claim, from February 1, 2004 forward, be allocated equally, between claim number 02-831246 and claim number 98-532171, is hereby DENIED in its entirety.
 Therefore, it is the order of this Staff Hearing Officer that the prior award of Wage Loss Compensation, pursuant to the Industrial Commission's Reconsideration Order of January 6, 2006, mailed May 6, 2006, is to be paid 100% under claim number 02-831246[.] * * * *Page 22 
 The remainder of the District Hearing Officer's Order, from the hearing of October 20, 2005, mailed November 25, 2005, which is not in conflict [with] this Order, is hereby AFFIRMED in all other respects.
(Emphasis sic.)
 {¶ 39} 23. On July 11, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of June 15, 2006.
 {¶ 40} 24. On July 26, 2006, claimant filed another application (second application) for wage loss compensation. This application requested wage loss compensation beginning December 1, 2004. The second application listed only claim number 02-831246.
 {¶ 41} 25. In support of the second application, Dr. Patel completed the "medical report" form that must accompany the application. Dated June 4, 2006, Dr. Patel's report lists December 29, 2005, as the date of last examination.
 {¶ 42} On the form, Dr. Patel indicated that claimant can sit for six hours during an eight hour work day and he can stand and walk for four hours. He further wrote that sitting, standing and walking should be done "within tolerance." As in his prior medical report, Dr. Patel indicated that claimant can never lift or carry over 50 pounds and he should only occasionally lift or carry from 26 to 50 pounds. In contrast to his January 3, 2005 medical report, Dr. Patel indicated on his June 4, 2006 medical report that the restrictions are now permanent.
 {¶ 43} 26. Claimant's second application for wage loss compensation was heard by a DHO on September 12, 2006. Following the hearing, the DHO issued an order granting and denying wage loss compensation. The DHO's order explains: *Page 23 
 It is the order of the District Hearing Officer that the C-140 Application For Wage Loss filed by Injured Worker on 07/26/2006 is GRANTED to the extent of this order.
 The injured worker is AWARDED Working Wage Loss (WWL) from 3/7/05 to 3/13/05, 3/21/05 to 3/27/05, 4/6/05 to 4/24/05, 7/12/05 to 7/24/05, and 11/7/05 to 9/12/06, and continuing upon submission of appropriate proof. Injured worker has restrictions of limited sitting, standing, walking, bending, crawling, squatting, no lifting over 50 pounds, limited lifting over 10 pounds, that prevent him from returning to his former position of employment as a mechanic.
 This order is based on the reports of Dr(s) Patel, 8/2/05.
 The following periods are DENIED: 12/1/04 to 12/7/04, 12/15/04 to 12/201/04 [sic], 7/4/05 to 7/11/05, 8/15/05 to 8/21/05, 8/29/05 to 9/4/05, 10/10/05 to 10/16/05, and 10/31/05 to 11/6/05. These periods are DENIED as they were due to voluntary layoffs. These periods have been specifically denied by the full Commission, in their order of 1/5/06.
 Wage Loss is DENIED from 4/4/05 to 4/5/05, as injured worker was off work due to personal leave and not due to the injury in this claim.
 This order is additionally based upon the personnel records of the employer.
(Emphasis sic.)
 {¶ 44} 27. Relator administratively appealed the DHO's order of September 12, 2006. Following an October 18, 2006 hearing, an SHO issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 09/12/2006, is MODIFIED to the following extent. Therefore, the C-140 Application of Wage Loss, filed by injured worker, 7/26/06, is GRANTED to the extent of this order.
 The Hearing Officer grants working wage loss from 3/7/05 to 3/13/05, 3/21/05 to 3/27/05, 4/6/05 to 4/24/05, 7/12/05 to 7/24/05, and 11/7/05 to 6/4/06. *Page 24 
 The Hearing Officer relies upon restrictions from Dr. Patel, dated 8/2/05, of limited sitting, standing, walking, bending, crawling, squatting, no lifting over (50) pounds, limited lifting over (10) pounds, that prevent him from returning to his former position of employment as a mechanic.
 The Hearing Officer DENIES the following periods requested: 12/1/04 to 12/7/04, 12/15/04 to 12/21/04, 7/4/05 to 7/11/05, 8/15/05 to 8/21/05, 8/29/05 to 9/4/05, 10/10/05 to 10/16/05 and 10/31/05 to 11/6/05. These periods are denied as they were due to voluntary layoffs. Additionally, any periods that injured worker was on inverse layoff from 11/7/05 through 6/4/06, are also to be excluded.
 Wage loss is denied from 4/4/05 to 4/5/05 as injured worker was off work due to personal leave and not due to the injury in the claim. Wages from those days are to be excluded from the wage calculation.
 The Hearing Officer makes this order based upon the personnel records of the employer.
(Emphasis sic.)
 {¶ 45} 28. On November 1, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of October 18, 2006.
 {¶ 46} 29. Earlier, on September 5, 2006, relator, DaimlerChrysler Corporation, filed this mandamus action.
 {¶ 47} 30. On November 15, 2006, relator filed an amended complaint.Conclusions of Law:
 {¶ 48} State ex rel. Jordan v. Indus. Comm., 102 Ohio St.3d 153,2004-Ohio-2115, is dispositive of this action. Based on that case, it is the magistrate's decision that this court grant a writ of mandamus, as more fully explained below. *Page 25 
 {¶ 49} In Jordan, the claimant, Jimmie L. Jordan, Jr., sustained an industrial injury while employed with Ford Motor Company. Ford offered and Jordan accepted a light-duty job at the same hourly wage as before. Unlike his prior job, however, Jordan, for reasons yet to be determined, received substantially less overtime despite an absence of medical restrictions limiting the number of hours he could work. Consequently, Jordan's weekly earnings were usually less than those before the injury.
 {¶ 50} After Jordan moved for wage loss compensation, the following proceedings occurred:
 * * * A district hearing officer ("DHO") for appellee Industrial Commission of Ohio denied the application, finding no causal relationship between claimant's injury and his reduced hours. Without explaining, the DHO said simply that "[a]ny loss of overtime would appear to be related to any number of factors." A staff hearing officer ("SHO") also denied the application, but for other reasons. In an ambiguous order, the staff hearing officer suggested the absence of an actual wage loss in citing a lack of evidence that others in claimant's former position of employment were still receiving overtime. She also, however, mentioned a lack of evidence that claimant would have accepted overtime if offered, implying no causal relationship between wage loss and injury. Further consideration was denied.
 Claimant petitioned the Court of Appeals for Franklin County for a writ of mandamus, claiming that the commission had abused its discretion in denying his request for compensation. The court of appeals, speaking through its magistrate, noted that "the record includes no evidence to show why claimant did not receive overtime hours." Rather than order the commission to reconsider the application, however, the court denied the writ, prompting claimant's appeal to this court as of right.
(Emphasis sic.) Id. at ¶ 2-3. The Jordan court further states:
 The parties agree that claimant was making approximately $1,300 per week when injured. He quickly took light-duty *Page 26 
work with the same employer at the same $22.23 hourly rate as before. From these numbers, it follows that if the claimant was earning $1,300 weekly, he was working considerable overtime to get it.
 During the disputed period, claimant worked minimal overtime with a commensurate decline in earnings, and it is around this that controversy revolves. The commission's order implied that no wage loss existed, based on the absence of evidence that others in claimant's former classification were still receiving overtime during that period. Claimant assails that reasoning, citing State ex rel. Bos v. Navistar Internatl. Transp. Corp. (2000), 90 Ohio St.3d 314[.] * * *
 Bos involved a claimant whose former associates apparently received a raise after injury forced claimant into a lower-paying assignment. The commission refused to compare claimant's post-injury earnings with those of his fellow employees to calculate wage-loss differential, and the court of appeals upheld the order. We did not, however, address this holding, confining our analysis instead to the novel wage-averaging proposal raised in Navistar's sole proposition of law.
 Bos does not, therefore, advance claimant's argument, but that does not detract from his position's overall viability. Ohio Adm. Code 4125-1-01(F) prescribes the claimant's average weekly wage as the preinjury benchmark against which to compare post-injury earnings. Therefore, any changes to what claimant could have been making had he remained at his former position of employment — via raises or overtime — are irrelevant. Bos renders even less germane to the question of actual wage loss the earnings of others and the amount of their underlying overtime. The commission thus abused its discretion to the extent that it attempted to assess claimant's wage loss by comparing it to the overtime available to those in his former position.
 Actual wage loss is, of course, inconsequential absent a causal relationship to claimant's allowed conditions. The DHO specifically found no causal relationship between the industrial injury and reduced wages, but the SHO adopted completely different reasoning in denying claimant's wage-loss application. The SHO having found no actual wage loss, *Page 27 
the question of causal relationship became moot, and the SHO went no further. She did offhandedly refer to a lack of evidence that "claimant would have accepted such overtime if offered," but that is not entirely accurate. Claimant's preinjury pattern of routinely performing overtime, at a minimum, suggests his willingness to accept overtime.
 Acceptance, however, is predicated on overtime being offered, and, on this, the commission is silent. Two key questions thus remain unaddressed. First, was overtime offered? If it was and was declined, claimant's refusal — unless supported by medical restrictions on the number of hours claimant could work — would break the requisite causal connection. Second, if it was not offered, then why not? If, for example, overtime was rescinded on a plantwide basis for economic reasons, then again there would be no causal connection. If, however, the employer singled out claimant because of his injury, a causal relationship between injury and wage loss could be present.
 For these reasons, further consideration of the question of causal relationship is warranted. The judgment of the court of appeals is reversed, and the cause is returned to the commission for further proceedings and an amended order.
(Emphasis sic.) Id. at ¶ 5-11.
 {¶ 51} During the August 15, 2004 hearing before the SHO, claimant testified as follows under direct examination by his counsel:
 Q. Mr. Breuer, you came back to work in September of `04. You had restrictions on your low back. Were you able to return to your job as a mechanic at that time?
 A. No.
 Q. Okay. You were still assigned in the mechanic department, correct?
 A. Correct.
 Q. And why would that be? *Page 28 
 A. They told me they would find me something suitable. I was top seniority, top of the list to be placed, they would find me something suitable, but they asked that I do not let them place me, wait the short period of time that it would take for a bid to come open, and if I took the bid I would be able to work overtime, where if you're PQX and they place you in a department, you have no overtime rights.
 Q. Okay. So if I understand it correctly from what you've just told us, if you have a PQX and you ask labor relations to assign you a job, you can get assigned a job, but you have no right to overtime?
 A. Correct.
 Q. And if, however, you have the ability to bid into a different department, then that — your ability to bid and land in that particular department allows you then potential overtime?
 A. Correct.
 {¶ 52} Here, there is no real dispute that claimant would have accepted overtime if it were offered. Also, there is no dispute that claimant was not medically restricted from working overtime.
 {¶ 53} Moreover, claimant never claimed that the basis for his reduced overtime at the sanitation department was that he was singled out by his employer because of his industrial injury.
 {¶ 54} Apparently, the sanitation department simply did not provide the overtime that was available to mechanics. In short, underJordan, there is no evidence in the record that the reduction in overtime available to claimant was directly related to the industrial injury.
 {¶ 55} In the magistrate's view, under the Jordan rationale, even if the commission properly determined that the claimant was unable to perform the duties of a *Page 29 
mechanic and thus was compelled by his industrial injury to transfer to the sanitation department, the resultant reduction in overtime is not compensable given that the claimant was not singled out because of his industrial injury.
 {¶ 56} Given the above analysis, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its orders granting R.C. 4123.56(B) wage loss compensation and to enter orders denying said compensation.
 KENNETH W. MACKE, MAGISTRATE *Page 1